ROELLE (UNITED STATES v.). See Case No. 16,186.

ROEMER (CROUCH v.). See Case No. 3,437.

## Case No. 11,996.

ROEMER v. LOGOWITZ et al.[1]

Circuit Court, D. New Jersey. Nov. 7, 1871.

PATENTS—PATENTABILITY—FASTENINGS FOR BAGS —EQUITY PLEADING—SURPLUSAGE.

[1. In equity pleading, after alleging the infringement of a valid patent, it is surplusage, and not multifariousness, to aver the infringement of a void reissue thereof.]

[2. A new device, though inferior to prior devices for the same purpose, is "useful" and patentable, if it be not frivolous, nor injurious to public morals or to the well-being of society.]

[3. The novel combination of movable staples at the corners of a travelling bag frame, with a lock in the middle of the frame, is patentable as a fastening device, although staples and locks had been in use separately theretofore.]

[4. A device known and used in foreign countries, but not patented there, nor described in a printed publication, is patentable in the United States by a person without notice thereof.]

[5. Bending the metal top of a travelling bag frame into sockets for fastening-staples at the corners is a patentable novelty, with respect to a device whereby such sockets are made by other pieces of metal attached to the plate.]

[6. The patent granted to William Roemer, July 31, 1866 (No. 56,801), for "improvements in travelling bags," held valid.]

[Disapproved in Roemer v. Simon, Case No. 11,997.]

[This was a bill in equity by William Roemer against Samuel Logowitz and others for infringement of letters patent.]

BY THE COURT. This is a bill filed by complainant for an injunction and an account for the infringement of his letters patent by the defendants. He claims an exclusive right of making, using, and vending to others to be used, certain new and useful improvements in travelling bags, secured to him and his assigns by two several letters

[1] [Not previously reported.]

patent; the first dated July 31, 1866, and numbered 56,801, and the other dated October 20, 1868, and numbered 83,212. The charge in the bill is that the said defendants, associated and doing business together, with full knowledge of complainant's rights, and without his license, manufactured, used, and sold to others to be used, large quantities of devices for fastening and holding together the jaws or mouths of travelling bags or satchels, in combination with the said jaws, which devices are the same as, and possess the same elements as, those made and invented by complainant, and which form the new and useful improvement in travelling bags, as named and described in and covered by his letters patent, and that said devices so manufactured and sold by defendants are well calculated to deceive and mislead the public, and being of an inferior quality and style, and the manner of making the same is such, that they still further have damaged, and still damage, the sale of the complainant's invention, and the sale of his improvements under his said letters patent. The defendant Samuel Logowitz puts in his answer, denying (1) the novelty of the invention claimed by the plaintiff; (2) that the said inventions are the subject-matter for a patent, under the patent laws of the United States; (3) that the defendants have infringed any of the rights secured to the plaintiffs in said patents.

A large amount of testimony has been taken, and various exhibits made, by the respective parties, for the purpose, on the one hand, to prove the complaint, and, on the other, to establish the points of defense, all of which I have carefully examined and considered. The counsel for the defendants, in the beginning of his argument, asked that the complainant's bill might be dismissed for multifariousness. He stated that it set forth the infringement of two distinct and separate patents, without any allegation or proof that they were connected together or used simultaneously, which it was necessary to show in order to embrace violations of both in the same suit. The defendants ought to have raised this objection by demurrer to the complainant's bill, although the court doubtless has the power, sua sponte, to take it at the hearing, where it thinks that the ends of justice require such a course. Story, Eq. Pl. § 271; Ward v. Cooke, 5 Madd. 122; Whaley v. Dawson, 2 Schoales & L. 370. Instead of demurring to the bill on this ground, he distinctly alleges that the invention described and claimed in complainant's second patent, No. 83,212, and every substantial and material part thereof, is described in the first patent, No. 56,801, and that, therefore, the said patent No. 83,212 is wholly null and void, and in the affidavits put on file by him, on resisting the motion for a preliminary injunction, is one of Adolph Faber du Faur, who swears that he has had large experience as an expert in patent cases, that he has exam-

[Drawing of patent No. 56,801, granted July 31, 1866, to W. Rœmer. Published from the records of the United States patent office.]

Fig. 1.

ined the two patents of the complainant, and that they are substantially the same invention. Admitting the allegation to be true, and treating the complainant's second patent as a mere duplication of the first, as the defendant, by such proof, would have us do, we must regard the description of the second patent in the bill of complaint as surplusage, and the question of multifariousness does not arise. As all the testimony put in by both parties in the cause refers to complainant's patent No. 58,801, and the complainant's solicitor, in his argument, waived all parts of his pleadings relating to the later patent, No. 83,212, and acknowledged that there was no proof of its infringement, we will consider the case in reference only to the first patent.

These letters patent were granted to the complainant on the 31st of July, 1866, for "improvement in travelling bags." In the specifications annexed he says:

"The nature of my invention consists in the application of two staples or clamps, one at or near each end, to the frame of a travelling bag, etc., in such a manner that when the said bag is packed very full the said staples or clamps shall fasten the ends or corners of the frame together so as to prevent any articles from falling out of the same, and at the same time relieve the lock of the bag from any undue, or excess of, strain."

"In the drawing, C represents the iron frame to which the material forming the travelling bag or valise is attached, made in the usual manner, and provided with a lock, D, near its center. On the top of this frame, near the rounded corners, I apply a staple or clamp, J, J, made of strong wire, and turned down at each end, and secured by a strap, E, firmly attached to the top of the frame in such a manner as to allow the staple or clamp to be turned easily. * * * This clamp is made at a very small expense, and, in combination with the lock usually ap-

plied, secures firmly the frame of the bag together, so that, even when packed very full, the frame will be prevented from opening at the corners. I am aware that clamps have been applied to small and fancy bags, instead of a lock, at or near the center of the frame, and do not claim, therefore, the application of clamps or staples to travelling bags, broadly. But what I claim as my invention, and desire to secure by letters patent, is a frame for travelling bags, having staples, J, and strap, E, adjusted on the top thereof, relieving the lock from strain, as described, constructed, combined, and arranged as herein specified."

The sixth section of the act of July 4, 1836 (5 Stat. 119), inter alia, enacts that when any person has invented any new and useful improvement, or any machine not known or used before his invention, and not in public use or on sale with his consent, as inventor, he may make application to the commissioner of patents, and, on due proceedings had, may obtain a patent therefor. He is required to deliver a written description of his invention, and of the manner of its construction, in such exact terms as to enable any person skilled in the art to which it appertains to make the same; and, in case of a machine, he must fully explain the principle, and the several modes in which he has contemplated the application of the principle or character by which it is distinguished from other inventions, and shall particularly specify and point out the part, improvement, or combination which he claims as his own invention or discovery. Looking at the complainant's description of his invention, with his specifications, in the light of this section, what is the improvement which he claims to have made? Not the frame of a travelling bag, as the counsel for the defendant so earnestly insisted, but rather a new application of staples or

clamps to the frame, near each end, whereby the lock is relieved from strain, and the jaws of the bag, when it is overpacked, are prevented from bulging. The same result is accomplished that was avowed to be the object of the Matthew's improvement, for which a patent was granted in 1859, but the complainant claims that he reaches this result by the use of substantially different mechanical contrivances.

1. The defendant denies novelty to such improvement; declares that the complainant's devices for holding the jaws together were well-known constructions and arrangements in travelling bags, satchels, and such articles, and were used by persons in the United States and elsewhere, long anterior to the date of his patent. In the present improved state of the arts, it is easier to raise the objection of novelty than to determine it. If the complainant's claim had been for the invention of a specific machine, the question here would be whether it was substantially new in its structure and mode of operation, and not a mere change of form, or in the proportion of its parts. But, as it is for an improvement to a manufacture in common use, the precise inquiry is whether the alleged improvement produces the same effect by the same mechanical means,—which are substantially the same. As the letters patent granted to the complainant prima facie confer upon him the exclusive right to its use and enjoyment, the burden of proving this allegation rests upon the defendant. This he has attempted to do by the production of other well-known fastenings, of which he claims that the complainant's patent is a mere mechanical equivalent. He has used great industry in getting together and exhibiting the various devices used by travelling bag makers during the last 10 years for fastening together the jaws or frames of the bags. With the exception of Exhibits Nos. 13 and 14, to which we shall advert hereafter, none of them seem to impair the originality of the complainant's patent. Although cheap in cost and simple in construction, it appears to accomplish the end sought to be attained by such contrivances by substantially different means, and by a better combination of devices than any to which the defendant has called our attention. As to the Cattnach Exhibits 13 and 14, they are not only very similar to the complainant's combination, but we are satisfied they were manufactured by him during the spring or summer of 1866. The recollection of Cattnach and his salesman, Brewer, in regard to the time when the frames to which these clamps were attached came into their possession, is not definite enough to overcome the direct testimony of the complainant, Hackmeister, and Meyberg, corroborated by many incidental circumstances, who identify the frame, lock, staple, and strap as the manufacture of the complainant while his application for a patent was pending.

2. The defendant having failed to prove his allegation of the want of novelty in the complainant's invention, we will next consider his denial that it is the subject-matter for a patent. Under the patent laws of the United States, everything is patentable that is new and useful, and which comes within the definition of an art, machine, manufacture, or composition of matter, or an improvement on any of these. It has been held that a fair and liberal construction of the act makes it proper for the court to include every new and useful invention within one or other of the clauses designated in the statute. Having determined that the complainant's improvement is new, this objection is answered by inquiry now whether it is useful? This does not mean that the invention or improvement must be something of such general utility that it is superior to all other devices in use to effect the desired result, but simply that it must not be frivolous in its character, or injurious to the public morals, or mischievous to the well doing of society. It may be inferior to many of the methods, and yet useful, in the sense that the term is used in the patent laws. Trying the improvement by this test, can there be any doubt that it comes within the range of patentable objects? Clamps of different construction were in use to hold together the jaws of satchels and travelling bags, and hence the complainant, in his specifications, did not claim these broadly. But he took the iron frame of a valise or bag constructed in the usual manner, and on the top thereof, near the rounded corners of the frame, applied a staple or clamp made of strong wire, beaded down at each end, and secured by a strap attached to the top of the frame in such a manner as to allow the clamp or staple to be easily turned; when the ends or arms of the staple are turned up, permitting the frame to open, and, when turned down, holding them firmly together, thus easing the strain upon the lock when the bag is full, and preventing the jaws from bulging. It cannot be reasonably questioned that such a contrivance is useful and appropriate for the purpose for which it was designed. It may not be the most convenient mode of producing the result. If it is not, the loss will inure to the patentee, and not to the public, who, notwithstanding the patent, may still exercise their privilege of choosing the best. But it is a mode different from those exhibited by the defendant,— selected for sale by the defendant, if the charge of the complainant be true, because it was better than the others; and hence it is not obnoxious to the objection that it is a useless invention.

THE COURT then proceed to examine the evidence in order to decide whether the alleged infringement was proven. Holding that the burden of proof was on the complainant, they reach the conclusion that the fact of in-

fringement was proven, saying: "Upon the whole case, we are of the opinion that the complainant's invention, as described in his letters patent, is new and patentable; that there has been an infringement on the part of the defendant; and there must be a decree in favor of the complainant for an injunction and account, according to the prayer of his bill." The opinion then proceeds as follows:

Having thus disposed of the case, as it appears before us in the evidence, we will consider the application of the counsel of the defendant for leave to amend his answer, and for an extension of time to enable him to prove that the complainant's invention was known and used abroad prior to the date of his letters patent, and that he was aware of such use when he obtained the said letters. Under the first proviso of the fifteenth section of the act of 1836 (5 Stat. 123), if it shall appear that the patentee, at the time of making his application for the patent, believe himself to be the first inventor or discoverer of the thing patented, the same shall not be held to be void on account of the invention or discovery being known or used in any foreign country, it not appearing that the same, or any substantial part thereof, had before been patented or described in any printed publication. It hence results that a foreign knowledge or foreign use of the thing patented, where not accompanied by a patent, or by a description of the same in a printed publication, will not defeat a patent for the same invention or discovery, under our laws, where the applicant believed himself to have been the first inventor or. discoverer. But if he had knowledge of the invention; if, in the words of the preceding part of the same section of the act, he "surreptitiously or unjustly obtained the patent for that which was in fact invented or discovered by another"; if in short, he meanly attempted to enrich himself at the public expense by stealing the product of other men's brains,—then the letters patent give him no exclusive use of the thing patented, and he cannot maintain an action for the infringement of that which belongs to another, or, if abandoned, what has become the common property of society. This application of the defendant is founded upon the ex parte affidavits of Adam Thumling and Morritz Wolfsky, which are not evidence in the cause, and are not offered as evidence, but to lay the foundation for the presumption of knowledge on the part of the complainant. A metal catch revolving in a socket on the top of a plate made to fasten the device to the frame of a bag, and marked "Exhibit A," is attached to these affidavits, and both of the witnesses swear that they are manufacturers of traveling bags, and have made and used such a catch and plate or strap in the business since the year 1863, and that catches and plates of like or somewhat similar construction have been in common use in London for some years previous to that date. A catch and plate of the alleged invention of the complainant, and marked "Exhibits B and C," are also attached; and these affidavits testify that, having compared them with Exhibit A, they are of the opinion that the two devices are identical and similar in principle and use, and only slightly different in form.

The counsel for the defendant contends that these affidavits, although ex parte, taken in connection with the admissions of the complainant, upon his cross-examination, that he worked in London during the years 1861, 1862, and 1863, and especially that he was employed in the manufactory of one of the affiants (Wolfsky) from March to August, 1862, afford such a presumption of his knowledge of the prior invention abroad, and his want of good faith in his application for the patent here, that further time should be allowed, after the amendment of the answer, to make legal proof of the alleged facts. Upon such an application the first inquiry, obviously, is whether, in fact, the invention of the complainant is the same in principle as the one known and used abroad. If different, or if an improvement, his knowledge of the foreign use of that would be no bar to his right to a patent here for this. If there be anything new or useful in the complainant's device, it is in the simple and cheaper mode in which he holds the clamp to its proper place on the frame. In the foreign Exhibit A the socket is made by bending a piece of metal around the clamp, and fastening the two ends on the underside of the plate, thus forming a socket in which the clamp can be adjusted for use. The complainant dispenses with this strip of metal, and simply allows the clamp to revolve under the plate, forming a socket or loop by raising the plate at the place where the catch is to be inserted, of sufficient size to permit the catch fitting therein to work easily. Now, it is hardly just to hold that these inventions are the same. The difference is slight, but, in its practical results, material. It is enough to indicate the exercise of the inventive faculty in the construction of the complainant's device. In such cases the utility and importance of the new combination afford the requisite test of the amount of the invention involved in the change. It has been held, for instance, that the mere substitution of one metal for another in a particular manufacture might be the subject of a patent, if the new article were better, more useful, or cheaper than the old. Curt. Pat. § 8. The complainant's improvement consists in the different means employed by him to hold the clamp in its proper place. To that extent it is new, and, in so far as it is more simple and cheap, it is useful. Possessing the qualities of novelty and utility, it is patentable. Holding these views in reference to the case, I must deny the motion to amend the answer, and for time to produce testimony as to the prior use of the Exhibit A.

[NOTE. In a subsequent action, Roemer's patent was held invalid. See Roemer v. Simon, Case No. 11,997.]